```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
PAUL T. GUDANOWSKI,                              :
                        Plaintiff,               :
                                                 :
v.                                               :
                                                 :
TROOPER DARRYL M BURRELL                         :
in his individual capacity, TROOPER              :      OPINION AND ORDER
GREGORY MAXWELL in his individual                :
capacity, TROOPER FRANCISCO E.                   :      20 CV 111 (VB)
MADERA in his individual capacity,               :
TROOPER ANDREW T. BUKOVINSKY in                  :
his individual capacity, TROOPER WILLIAM         :
R. PAYNE in his individual capacity,             :
OFFICER BRIAN C. MONTAGUE, and                   :
OFFICER KEVIN J. FELTEN,                         :
                        Defendants.              :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Paul T. Gudanowski brings this action pursuant to 42 U.S.C. § 1983 against defendants New York State Police Troopers Darryl M. Burrell, Gregory Maxwell, Francisco E. Madera, Andrew T. Bukovinsky, and William R. Payne (collectively, the "New York Defendants"), as well as East Rutherford, New Jersey, Police Officers Brian C. Montague and Kevin J. Felten (collectively, the "New Jersey Defendants"), alleging violations of plaintiff's Fourth, Eighth, and Fourteenth Amendment rights.

Now pending are separate motions to dismiss the second amended complaint ("SAC") filed by the New York Defendants and the New Jersey Defendants pursuant to Rule 12(b)(6). (Docs. #33, 40).

For the following reasons, the motions are DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

**BACKGROUND**

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges that on January 2, 2017, defendants used excessive force against him when arresting him after a two-state car pursuit, and that certain defendants failed to intervene in the alleged use of excessive force.

I.      Original Complaint

Plaintiff, then proceeding pro se and incarcerated at Collins Correctional Facility, completed a form complaint dated and signed December 28, 2019, which was filed on the docket on January 6, 2020.  (Doc. #1 ("Compl.")).

The original complaint did not identify any of the seven defendants by name.  Rather, the caption and the "Parties in this complaint" section named eight defendants as "John Doe, N.Y. State Trooper" and two defendants as "John Doe, East Rutherford, N.J., Police Officer." (Compl. at ECF 1-3).[1]  Plaintiff alleged that on January 2, 2017, at approximately 9:00 a.m., "Approximately #6 to #8 John Does, New York State Troopers, + #2 John Does, East Rutherford, New Jersey Police Officers, beat the ever-living shit out of me."  (Id. at ECF 2, 4). He alleged twenty to forty other John Doe police officers, mostly New York State Troopers, and a news helicopter were present at the arrest.  Plaintiff did not allege any further information describing or identifying defendants, nor the actions each purportedly took.  He alleged he suffered multiple contusions, abrasions, fractures, and lacerations from the use of excessive

---

[1]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

force. He also alleged the incident involved a flatbed tow truck from Brookside Towing in Hackensack, New Jersey, and that a video of the incident may have been uploaded to YouTube.

By Order dated March 4, 2020, pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997), the Court instructed the Attorney General of the State of New York ("NYAG") to "ascertain the identities of the John Doe defendants whom Plaintiff seeks to sue here." (Doc. #7 at ECF 1).

By letter dated April 29, 2020, the NYAG identified the New Jersey police officers involved in the January 2, 2017, incident as East Rutherford Police Officers Brian Montague and Keven Felten, and requested an extension of 45-days to identify the New York John Doe defendants, which the Court granted. (Doc. #13).

By letter dated June 11, 2020, the NYAG requested the Court instruct plaintiff to file an amended pleading to provide more specific allegations regarding the identities and actions of the unidentified New York defendants, because absent additional information, the NYAG was unable to identify with certainty the intended defendants. (Doc. #15). Thus, by Order dated June 12, 2020, the Court ordered plaintiff to file a SAC with additional details by August 12, 2020,[2] so the still-unidentified John Doe defendants could be ascertained. (Doc. #16).

By letter dated August 11, 2020, attorney Daniel Ginzburg advised the Court that plaintiff was in the process of retaining his law firm and requested an extension of time until October 12, 2020, to file the SAC. (Doc. #17). He wrote that the extension was necessary to allow plaintiff to serve Freedom of Information Law ("FOIL") requests, which would allow plaintiff to ascertain the identities of the John Doe defendants and ensure the SAC would be the final complaint filed in the case. (Id.). The Court granted this request.

---

[2]  By Order dated April 8, 2020, the Court struck from the ECF docket the first amended complaint, which plaintiff had improperly filed. (Doc. #10).

II.    Second Amended Complaint

After plaintiff retained Mr. Ginzburg, he filed the SAC on October 12, 2020, naming the seven defendants now in this case.  (Doc. #22 ("SAC")).

In the SAC, plaintiff alleges that on January 2, 2017, he pulled his car over near the New York State Thruway in Rockland County, New York, at the end of a car pursuit with defendants.  Defendants allegedly surrounded the car with weapons drawn and ordered him to "freeze" or exit the vehicle.  (SAC ¶ 16).  Plaintiff alleges he was wearing a seat belt, had his hands raised, did not move, and told defendants "he did not want to lower his hands so that they would not mistake his actions as him reaching for a weapon."  (Id. ¶ 17).  According to plaintiff, one of the defendants broke the passenger door window and began punching plaintiff.  He further alleges a different defendant reached through the driver's side window and cut through plaintiff's seat belt.  According to plaintiff, one or more of the defendants then pulled plaintiff through the driver's side window and slammed him to the ground.  He further alleges several defendants surrounded plaintiff and "proceeded to pummel and batter him with their hands, fists, feet and/or police weapons" even though he did not resist arrest or refuse to follow defendants' instructions.  (Id. ¶ 21).

Plaintiff alleges that throughout this time, he could not determine which of the defendants hit him because he was on the ground covering his face with his hands to protect himself.  He also alleges that although each defendant was in the vicinity of the other defendants and saw the assault, he did not hear or see any defendant attempt to stop another defendant from hitting him.  Plaintiff alleges he was then taken to a hospital to treat his injuries.

4

# DISCUSSION

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[3] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.    Timeliness of Plaintiff's Claims

Defendants argue the SAC should be dismissed because plaintiff did not commence this action within the statute of limitations, and the SAC does not relate back to the original complaint.

Although this is a close call, the Court disagrees.

---

[3]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

5

A.      Statute of Limitations

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009).[4] A Section 1983 claim accrues when the plaintiff knows or has reason to know of the harm. Id. The statute of limitations is an affirmative defense. Harris v. City of New York, 186 F.3d 243, 250 (2d. Cir. 1999). Thus, on a Rule 12(b)(6) motion, the Court may only dismiss an action based on the statute of limitations if, on the face of the complaint, it is clear the claim is untimely. Id.

Further, for purposes of calculating the statute of limitations, a pro se inmate's complaint is deemed filed on the date he delivered it to prison officials for mailing. Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir. 2004).

Here, plaintiff declared under penalty of perjury that on December 28, 2019, he delivered his original complaint to prison authorities to be mailed to the Pro Se Office of the United States Court for the Southern District of New York. (Compl. at ECF 8).[5] Thus, he timely filed the original complaint five days before the statute of limitations ran on January 2, 2020.

Almost ten months later, and after the statute of limitations expired, plaintiff filed the SAC identifying defendants by name. "Generally, 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013).

---

[4] Notwithstanding the fact that the alleged excessive force in this case took place in New York, and that New York is the forum state, the New Jersey Defendants argue New Jersey's two-year statute of limitations applies to the claims against them. They offer no case law or other legal authority to support this argument, and it is therefore rejected.

[5] In addition, the original complaint was mailed to the Court on December 30, 2019. (Compl. at ECF 9).

6

Accordingly, plaintiff's claims are timely only if the SAC relates back to the original complaint pursuant to Fed. R. Civ. P. 15(c).  Id.

B.  Relation Back Doctrine

Under the relation back doctrine, "an amended pleading relates back to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations."  Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 541 (2010).

Rule 15(c)(1)(A) allows for an amended pleading to relate back to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back."[6] As noted above, New York law applies to the Section 1983 claims.  Thus, in considering whether a Section 1983 pleading relates back to the date of an original pleading that named only John Doe defendants, courts apply New York Civil Practice Law and Rules ("CPLR") § 1024.  Hogan v. Fischer, 738 F.3d at 518–19.  That section provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known.  If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

To take advantage of Section 1024, the plaintiff must (i) exercise due diligence prior to the running of the statute of limitations to identify the defendants by name, and (ii) describe the John Doe party "in such form as will fairly apprise the party that he is the intended defendant." Hogan v. Fischer, 738 F.3d at 519.

---

[6]  Plaintiff concedes that Rule 15(c)(1)(C)—which allows for relation back to the date of the original pleading when, among other criteria, "the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity"—does not apply.

        1.      Due Diligence

"There is no clear rule as to what specific actions a plaintiff must take to satisfy the due diligence requirement." Abreu v. City of New York, 2018 WL 3315572, at *5 (S.D.N.Y. July 5, 2018). "Due diligence in this context requires that a plaintiff show that he or she made timely efforts to identify the correct party before the statute of limitations expired." Ceara v. Deacon, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014). "Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the expiration of the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe' procedure provided in CPLR § 1024." Id. (collecting cases). "The onus of identifying an officer defendant's name, or at least making a good faith effort, lies on the plaintiff. Due diligence is not exercised by 'last minute' or token discovery requests." Barrett v. City of Newburgh, 720 F. App'x 29, 33 (2d Cir. 2017) (summary order). "[C]ourts have found due diligence where plaintiffs, prior to filing their complaints, submitted discovery requests to the Attorney General's office, made multiple inquiries to the relevant government department, or contacted an official to provide information about the defendant's full identity." Abreu v. City of New York, 2018 WL 3315572, at *5.

Notably, "courts in this District typically find a lack of due diligence only where the plaintiff failed to take any action beyond filing his original complaint prior to the expiration of the statute of limitations." Abreu v. City of New York, 2018 WL 3315572, at *5 (emphasis added).

This is not such a case.

8

Here, in a sworn affidavit submitted in support of his opposition to the pending motions,[7] plaintiff declares he made five distinct efforts to identify the John Doe defendants before the expiration of the limitations period: (i) on an unspecified date, he sent a FOIL request to the NYAG, to which he did not receive a response; (ii) on January 27, 2017, within a month of the alleged use of excessive force, he sent a FOIL request to the Orange County Correctional Facility ("OCCF") where he was then incarcerated, requesting copies of his "medical records, intake records, photos, everything," to which he received no response despite two follow up requests he sent to OCCF on March 17, 2018, and May 24, 2018; (iii) on April 10, 2018, he submitted a "Request for Case Records" to the Legal Aid Society of Orange County, which had represented him on the criminal case stemming from the January 2, 2017, incident, seeking his complete case file, to which he also received no response; (iv) on May 23, 2018, he submitted a FOIL request to Downstate Correctional Facility, where he was previously incarcerated, seeking "copies of all records, files, photos, medical records, physic., everything," but did not hear back; and (v) on May 26, 2018, he submitted a FOIL request to the Bergen County Jail, seeking copies of "all of my files, records, photos, paperwork, [and] medical records," but also did not hear back. (Doc. #43). Plaintiff claims he hoped one of these records would have an arresting officer's name.

Because plaintiff took several actions to get records he claims he believed would identify the defendants—far from failing to take "any action beyond filing his original complaint prior to the expiration of the statute of the limitations"—the Court concludes plaintiff exercised due

---

[7] Although the affidavit is not integral to the complaint or subject to judicial notice, in considering whether CPLR § 1024 is met, a court may consider affidavits regarding the due diligence exercised—but not new allegations asserted therein. See Abreu v. City of New York, 2018 WL 3315572, at *1, n.1 (collecting cases). Accordingly, the Court presumes the veracity of plaintiff's representations at this time. "Should evidence later emerge calling into doubt the factual representations in the affidavit[], defendants will be at liberty to revisit these issues at summary judgment." Id.

diligence. See Abreu v. City of New York, 2018 WL 3315572, at *5 (finding plaintiffs satisfied due diligence under CPLR § 1024 when they made informal complaints at the precinct and hired a private investigator within a year of the alleged incident, despite taking no further action prior to filing the original complaint some two years later).

The Court is not persuaded by defendants' efforts to dismantle plaintiff's assertions about the due diligence he exercised. Despite their arguments that plaintiff should have more precisely requested records from the specific agencies involved in the alleged use of excessive force, plaintiff requested records from Bergen County Jail—the borough of East Rutherford is located in Bergen County. He also requested records from various New York state entities. The Court will not fault plaintiff, who appears to have been proceeding pro se when he sought such records, for failing to distinguish between the Bergen County Jail and the East Rutherford Police Department, or various New York state entities. And although plaintiff conceivably could have taken better or additional steps to ascertain the officers' names before filing the original complaint—for example, by following up with his Legal Aid attorney or asking for more specific records in any of his requests—the law does not place such a high bar on plaintiff.[8]

---

[8] The New York Defendants argue the Court should consider memoranda of law and a deposition transcript from a different litigation, because those documents demonstrate plaintiff knew the identity of the New York Defendants when he commenced this case, thus rendering CPLR § 1024 inapplicable. (Doc. #52 at ECF 13-14). The Court cannot. These documents are neither integral to the pleading nor otherwise incorporated by reference therein. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Moreover, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). In addition, the Court declines to convert the motion to dismiss into a motion for summary judgment.

        2.      <u>Fairly Apprised</u>

In addition, the original complaint included enough detail to fairly apprise the non-named defendants that they were the intended defendants. Although the original complaint did not describe defendants' appearances, it alleged the date and time of the incident, and that the intended defendants were New York State Troopers and East Rutherford Police Officers. Plaintiff also alleged specific details unique to the incident that an officer involved would likely remember, such as the presence of a news helicopter and the involvement of a flatbed tow truck from Brookside Towing in Hackensack, New Jersey. These allegations "provide[d] sufficiently specific information such that, if events occurred as [plaintiff] describes, [the officers] would fairly be expected to recognize [themselves] as the intended defendant[s]." <u>Kennedy v. City of New York</u>, 2015 WL 6442237, at *6 (S.D.N.Y. Oct. 23, 2015); <u>id.</u> at *5 ("[P]hysical descriptions are not the only means through which a plaintiff may adequately put an intended defendant on notice. . . . [W]here a plaintiff provides specific contextual information, that may satisfy the description requirement of C.P.L.R. 1024."); <u>Abreu v. City of New York</u>, 2018 WL 3315572, at *6, n.4 ("To be sure, the Second Circuit has held that physical descriptions may contribute to the sufficiency of the pleadings, but courts generally have not read a physical-description requirement into § 1024.").

Defendants argue they could not have known they were the intended defendants because the original complaint differentiated between "officers merely present and those [plaintiff] intended as defendants." (Doc. #34 at ECF 9; <u>see</u> Doc. #40-5 at ECF 17). But even if plaintiff did not specify which of the many officers present he specifically intended to sue, by virtue of having been involved in the incident described on January 2, 2017, defendants were fairly apprised that they may have been an intended defendant. See <u>Abreu v. City of New York</u>, 2018

11

WL 3315572, at *6 (finding sufficient plaintiff's allegations that 41st Precinct officers were involved in an unlawful search and seizure on a specific date, time, and location because "[o]fficers in the 41st Precinct—and particularly those working the overnight tour—reasonably could have read the complaint and known whether they were among the Doe officers"). That plaintiff ultimately did not sue every officer on the scene on January 2, 2017, does not preclude the now-named defendants from having been "expected to recognize [themselves] as the intended defendant[s]." Kennedy v. City of New York, 2015 WL 6442237, at *6.

Accordingly, the SAC relates back to the original complaint, and the complaint cannot be dismissed on statute of limitations grounds.[9]

III.     Excessive Force Claim[10]

The New Jersey Defendants argue the SAC does not plausibly allege a claim for excessive force.

The Court disagrees.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). "The Fourth Amendment test of reasonableness 'is one of objective reasonableness.'" Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 399 (1989)). Accordingly, to state a Fourth Amendment excessive force claim, a plaintiff must plausibly allege the force used by the defendant was

---

[9]     To the extent the New Jersey Defendants argue that they must have been served with the original complaint to have been fairly apprised they were the intended defendants, they cite no case law for this proposition, and the Court is not aware of any that would support this argument.

[10]    The New York Defendants moved to dismiss the SAC only on statute of limitations grounds.

"objectively unreasonable."  Cox v. City of New Rochelle, 2019 WL 3778735, at *7 (S.D.N.Y. Aug. 12, 2019).

"[T]he inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake."  Tracy v. Freshwater, 623 F.3d at 96.  This assessment may include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham v. Connor, 490 U.S. at 396.  It is typically the jury's "unique task . . . to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct."  Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999).

Here, plaintiff plausibly alleges an excessive force claim against each of the New Jersey Defendants.  He claims that one of the defendants broke the passenger door window and began punching plaintiff, one or more of the defendants pulled plaintiff through the driver's side window and slammed him onto the ground, and multiple defendants surrounded plaintiff and "proceeded to pummel and batter" him even though he did not resist arrest or refuse to follow defendants' instructions.  (SAC ¶ 21).  He also alleges he was taken to a hospital for treatment. At this early stage of the case, these allegations adequately plead an excessive force claim.

To the extent the New Jersey Defendants argue plaintiff only suggests they were possibly involved in the alleged excessive force, a "plaintiff need not establish which officer, among a group of officers, directly participated in the attack and which officer failed to intervene."  Smith v. Town of Lloyd, 2017 WL 11446304, at *4 (N.D.N.Y. Dec. 18, 2017).  At this early stage of the case, plaintiff's allegations suffice.

13

Accordingly, the excessive force claim against the New Jersey Defendants cannot be dismissed.

IV.     Failure to Intervene Claim

The New Jersey Defendants also argue the SAC does not plausibly allege a claim for failure to intervene.

The Court disagrees.

"As a preliminary matter, the Court . . . treats Plaintiff's failure to intervene claim as arising under the Fourth Amendment." Jackson v. Mastrangelo, 405 F. Supp. 3d 488, 493 (W.D.N.Y. 2019) (citing Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("[T]he district court correctly reclassified plaintiff's [failure to intervene in his arrest] claim as one brought under the Fourth Amendment, which prohibits unreasonable seizures of persons, as opposed to the Fourteenth Amendment, which guarantees substantive due process.")).

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know [] that excessive force is being used . . . or that any constitutional violation has been committed by a law enforcement official." Id.

Here, plaintiff plausibly alleges the New Jersey Defendants failed to intervene. Specifically, plaintiff alleges that while he was on the ground using his hands to protect himself, he did not hear or see any defendant try to stop another defendant from hitting plaintiff, but that each defendant was in the vicinity of the other defendants and saw the assault.

14

Accordingly, the failure to intervene claim against the New Jersey Defendants cannot be dismissed.[11]

## CONCLUSION

The motions to dismiss are DENIED.

By September 14, 2021, defendants shall answer the second amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motions.  (Docs. ##33, 40).

Dated: August 31, 2021
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[11] Plaintiff also purports to base his Section 1983 claims on the Eighth and Fourteenth Amendments.  But the "Eighth Amendment applies only to claims of cruel and unusual punishment imposed on an individual after he or she has been convicted of a crime."  Younger v. City of New York, 480 F. Supp. 2d 723, 730–31 (S.D.N.Y. 2007) (citing Whitley v. Albers, 475 U.S. 312, 318–19 (1986)).  Because plaintiff was neither convicted of a crime nor incarcerated at the time of the alleged incident, his excessive force allegations do not implicate the Eighth Amendment.  Moreover, as noted above, both the excessive force and failure to intervene claims arise out of the Fourth Amendment, not the Fourteenth Amendment.